UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
INTER INSURANCE AGENCY SERVICES LTD.,
and UNIVERSAL CASUALTY RISK RETENTION
GROUP, INC.

                 Plaintiffs,                                 **MEMORANDUM AND ORDER**
                                                                    2:24-cv-03720-OEM-LGD

           -against-

INSURANCE DEPARTMENT OF THE STATE OF
OKLAHOMA, GLEN MULREADY, DONNA
WILSON, RICK BINGHAM, and OKLAHOMA
RECEIVERSHIP OFFICE, INC.

               Defendants.
-----------------------------------------------------------------x

**ORELIA E. MERCHANT, United States District Judge:**

On May 23, 2024, plaintiffs Inter Insurance Agency Services Ltd. ("Inter Insurance") and Universal Casualty Risk Retention Group, Inc. ("UCRRG," together with Inter Insurance "Plaintiffs") filed their initial complaint against the Insurance Department of the State of Oklahoma (the "OID") and Glen Mulready ("Mulready"), in his official capacity.  *See* Complaint ("Compl."), ECF 1.   On June 3, 2024, Plaintiffs filed a motion for a temporary restraining order and order to show cause against the OID and Mulready.

On June 18, 2024, the OID and Mulready (the "Movant Defendants") moved to dismiss this action for lack of personal jurisdiction, lack of proper venue, and because the Insurance Department and Mulready are purportedly immune from suit.  *See* Motion to Dismiss ("MTD"), ECF 24.   On June 24, 2024, Plaintiffs amended their complaint and included as additional defendants Donna Wilson ("Wilson"), Rick Bingham ("Bingham"), and the Oklahoma

Receivership Office, Inc. (the "ORO," together with all other defendants, "Defendants").  *See* Amended Complaint ("Am. Compl."), ECF 32.

On July 8, 2024, Plaintiffs filed a second motion for temporary restraining order, order to show cause, and preliminary injunction.  *See* July 8 Memorandum in Support re: Unsigned Order to Show Cause ("July 8 TRO"), ECF 47.

Before the Court now is Defendants' motion to dismiss.  For the reasons that follow, this action is hereby transferred to the Western District of Oklahoma pursuant to 28 USC § 1406(a) and 28 U.S.C. § 1404(a), and Defendants' motion to dismiss is denied without prejudice to renewal following the transfer of this action.

## BACKGROUND

Plaintiff UCRRG is a federally chartered risk retention group domiciled in Oklahoma.  Am. Compl. at 3.  Risk retention groups are groups of "similar business[es] and professionals that create[] [their] own insurance company to self-insure […] risks."  *Id*.  Though incorporated and domiciled in Oklahoma, UCRRG "actually functions in California, Florida, Georgia, New Jersey, New York and Texas, and is managed from offices maintained by Plaintiff Inter Insurance on Long Island."  *Id*. at 12.  Plaintiff Inter Insurance writes liability insurance through UCRRG.  *Id*. at 2-3.

Defendants are the OID, an administrative state agency exercising administrative and executive powers in the State of Oklahoma; the Insurance Commissioner of the OID, Glen Mulready; the ORO, a nonprofit domiciled in Oklahoma; Donna Wilson, the Assistant Receiver and Estate Manager of ORO; and Rick Bingham, principal at Glynloen Insurance Consulting, and an appointed representative of the OID and the ORO.  *Id*. at 8.

Plaintiffs allege that Defendants, in violation of federal and Oklahoma state law, issued an injunctive order enjoining UCRRG from writing business in Oklahoma without proper court

2

approval. *Id*. at 2, 5.  The Liability Risk Retention Act, 15 U.S.C.A. §3901 *et seq*. (the "LRRA")), provides that "[a]ny district court of the United States may issue an order enjoining a risk retention group from soliciting or selling insurance, or operating, in any State (or in all States) or in any territory or possession of the United States upon a finding of such court that such group is in hazardous financial condition." 15 U.S.C. §3906. Oklahoma's own statute regarding the regulation of risk retention groups, Okla. Stat. Ann. tit. 36, §6451-68 (the "OK RR Act"), states that the Insurance Commissioner has the authority to "seek injunctive relief" but that the "injunctive authority of the Commissioner for risk retention groups is restricted by the requirement that any injunction be issued by a court of competent jurisdiction."  36 O.S. §6460.

Although Defendants are permitted to regulate insurance companies domiciled in Oklahoma under the McCarran-Ferguson Act, 15 U.S.C. §§1011-1015, Plaintiffs argue that the LRRA preempts Defendants' regulatory authority "to the extent that such law, rule, regulation, or order would make unlawful, or regulate, directly or indirectly, the operation of a risk retention group." Am. Compl. at 3-4; 15 U.S.C. §3902(a)(1).

In 2019, OID notified UCCRG of its plans to conduct an audit of UCCRG's books and records as required by Oklahoma state law every three years.  Am. Compl. at 20.  To conduct the audit, OID representatives traveled to Jericho, New York for a "multi-day in person audit."  *Id*. at 21.

On March 1, 2023, UCRRG submitted its annual report, including audited financial statements, in accordance with the LRRA and the OK RR Act.  *Id*. 22.  On October 26, 2023, Mulready issued an Emergency Order of Supervision ("Emergency Order") alleging that UCRRG's risk based capital ratio was too low and that UCRRG was thus in a financially hazardous condition.  Mulready ordered UCRRG to be placed under the supervision of the OID, effective

3

immediately.  *Id*. at 5.  On March 26, 2024, Mulready issued a "Suspension Instanter Due to Hazardous Financial Condition Order" (the "Suspension Order") pursuant to the Oklahoma Insurance Code and the OK RR Act, shutting down Plaintiff's operations in Oklahoma and every other state in which Plaintiffs conduct business.  *Id*. at 25-26.

Plaintiffs argue that the Suspension Order violated both the LRRA and the OK RR Act because OID issued an injunctive order without first receiving an order from "a court of competent jurisdiction."  *Id*. at 6; 15 U.S.C. §3906; Okla. Stat. Ann. tit. 36, §6460.  Plaintiffs further argue that the Suspension Order violates Plaintiffs' due process and equal protection rights under the Constitution.  *Id*. at 7.

## STANDARD OF REVIEW

The Movant Defendants seek dismissal (1) for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and (2) for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).  "A court applies the same standard of review in Rule 12(b)(3) dismissals as Rule 12(b)(2) dismissals for lack of jurisdiction." *Fedele v. Harris*, 18 F. Supp. 3d 309, 316 (E.D.N.Y. 2014).  Plaintiffs carry the burden of establishing that this Court has personal jurisdiction over Defendants and that venue in this District is proper.  *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) ("On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant.").  In making its determination regarding the propriety of venue in this District, the Court must "view all facts in a light most favorable to plaintiff" and "may consider facts outside the pleadings." *Tour Tech. Software, Inc. v. RTV, Inc.*, 377 F. Supp. 3d 195, 200 (E.D.N.Y. 2019).

4

**DISCUSSION**

The initial question before the Court is whether to address Defendants' personal jurisdiction challenge or Defendants' venue challenge first. "The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum." *Leroy v. Great Western United Corp.,* 443 U.S. 173, 180 (1979). However, because "neither personal jurisdiction nor venue is fundamentally preliminary in the sense that subject-matter jurisdiction is, when there is a sound prudential justification for doing so, a court may reverse the normal order of considering personal jurisdiction and venue." *Id.*; *Japan Press Serv., Inc. v. Japan Press Serv., Inc.*, No. 11 CV 5875 SJF ETB, 2013 WL 80181, at *5 (E.D.N.Y. Jan. 2, 2013) (same); *see also SBAV LP v. Porter Bancorp, Inc.*, No. 13 CIV. 372 PAE, 2013 WL 3467030, at *2 (S.D.N.Y. July 10, 2013) ("Although it is common to resolve challenges to personal jurisdiction before addressing motions to transfer venue, courts are not required to do so. Courts may instead address venue applications at the threshold, 'when there is a sound prudential justification for doing so.'").

Here, because the Court finds "that there are sound reasons for reversing the customary order in this case, we address the issue of venue first." *Leon C. Baker, P.C. v. Bennett*, 942 F. Supp. 171, 175 (S.D.N.Y. 1996). Reversing the customary order is particularly appropriate here, where the question of personal jurisdiction is considerably less clear-cut than the question of venue. *See, e.g.*, *SBAV*, 2013 WL 3467030 at *2 ("Addressing a venue motion in lieu of first addressing personal jurisdiction is particularly sensible where there is a close question whether personal jurisdiction exists over a defendant.").

Turning to the question of venue, the Court finds that a transfer of venue to the Western District of Oklahoma is proper pursuant to both 28 U.S.C § 1406(a) and 28 U.S.C. § 1404(a).

5

**A. 28 U.S.C. § 1406(a)**

The Movant Defendants argue in their motion to dismiss that this Court should dismiss this action for improper venue pursuant to 28 U.S.C. § 1406(a), or in the alternative transfer venue to the Western District of Oklahoma, which the Movant Defendants "do not dispute" as a "proper venue for this action."  Reply Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defendants' Reply"), ECF 45.  Pursuant to 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Defendants contend that venue is improper in this District because Plaintiffs failed to establish venue pursuant to 28 U.S.C. § 1391(b)(2), which provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Defendants argue that "a substantial part" of the events or omissions giving rise to this claim did not take place in the Eastern District of New York.

In assessing venue pursuant to 28 U.S.C. § 1391(b)(2), the Second Circuit has instructed district courts to construe the venue statute strictly.  *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005) ("In doing so, however, we caution district courts to take seriously the adjective 'substantial.'  We are required to construe the venue statute strictly.  That means for venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere.  It would be error, for instance, to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries.") (cleaned up).

Assessing substantiality for purposes of venue is a fundamentally fact-specific inquiry. *See Cold Spring Harbor Lab'y v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 553–54 (E.D.N.Y. 2011) ("Where there are some acts which took place within the plaintiff's chosen forum, they are properly deemed 'significant' if they have a 'close nexus to the claims.' 'Only the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a substantial part of the events are to be considered.' Although section 1391(b)(2) does not require that the most substantial part of the events giving rise to the claim occurred in the Eastern District, the Second Circuit has cautioned district courts 'to take seriously the adjective 'substantial' 'and thus 'for venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question.'") (cleaned up).

Here, the Court first must determine the scope of Plaintiffs' claims and then must determine which events directly gave rise to Plaintiffs' claims. Plaintiffs bring a claim for declaratory judgment and multiple claims brought under 42 U.S.C. §1983 and the United States Constitutions. Each of these claims challenges the regulatory actions taken in Oklahoma by Oklahoma regulators and their agents. Though Plaintiffs allege background facts that involve this district—primarily a 2019 in-person audit occurring in the Eastern District of New York and communications sent between Defendants in Oklahoma and Plaintiffs in the Eastern District—these events did not directly give rise to the claims brought by Plaintiffs nor do they bear a sufficiently close nexus to the claims to qualify as "a substantial part" for purposes of venue.

In determining venue, this Court has considered and weighed the financial harm that Plaintiffs allege they have suffered in New York. However, this Court does not find Plaintiffs' alleged New York-based financial harms to be sufficient to establish proper venue in this District. *See, e.g.*, *Fedele*, 18 F. Supp. 3d at 318 ("Other cases have held that the situs of the alleged harm

to the plaintiff is a factor in deciding whether a substantial part of the events or omissions giving rise to a claim occurred in the particular district.  However, 'this Court finds that venue determinations based solely on the location of the harm is contrary to Congress's intent in drafting section 1391(b) and the Second Circuit's directive that the venue analysis should focus on the relevant activities of the defendants.'") (cleaned up); *Blauschild v. Tudor*, 31 F. Supp. 3d 527, 532–33 (E.D.N.Y. 2014) ("As other cases in this circuit have held, 'when a court examines the question of whether venue in a forum is proper, it must focus on where the *defendant's* acts or omissions occurred.' Adhering to this rule comports with the purpose of the venue statute to 'protect[ ] a defendant from the inconvenience of having to defend an action in a trial court that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred.'") (cleaned up).

Because the Court finds that Plaintiffs have not established proper venue in this District pursuant to 28 U.S.C. § 1391(b)(2), it must comply with 28 U.S.C. § 1406(a)'s directive that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Here, the Court finds that Plaintiffs could have brought this action in the Western District of Oklahoma.  Venue is appropriate in the Western District of Oklahoma as a substantial part of the events giving rise to Plaintiffs' claims took place there.  The Western District of Oklahoma also has personal jurisdiction over each of Defendants.  Defendants Mulready and Wilson are alleged to be domiciled in the State of Oklahoma, granting the state general personal jurisdiction over them.  Am. Compl. at 8; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the

individual's domicile.").  Likewise for the OID and the ORO, which are alleged to have principal places of business in the state.   Am. Compl. at 8; *Daimler AG v. Bauman*, 571 U.S. 117, 137-38 (2014).  The Western District of Oklahoma also appears from Plaintiffs' allegations to have specific personal jurisdiction over Defendant Bingham under Oklahoma's longarm statute, which is "is coextensive with the constitutional limitations imposed by the Due Process Clause." *Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1131 (10th Cir. 1991).  Plaintiffs have adequately pled minimum contacts for Bingham, who is alleged to have an extensive business relationship with Oklahoma through his work with and on behalf of the ORO, where he purportedly acts "as the representative of the Supervisor, D. Wilson" and engages in weekly calls with Ms. Wilson.  Am. Compl. at 23-24; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).

Because the Court finds that the interest of justice would be served by transferring this action to the Western District of Oklahoma, the Court finds that a transfer to that District is merited pursuant to 28 USC § 1406(a).

## B.  28 U.S.C. § 1404(a)

The Court also finds that transferring this action to the Western District of Oklahoma is justified under 28 U.S.C. § 1404(a), which states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

"Section 1404(a) serves to 'prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'  '[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis.'"  *Hall v. S. Orange*, 89 F. Supp. 2d 488, 493–

94 (S.D.N.Y. 2000) (cleaned up).  A district court "may sua sponte transfer an action in the interest of justice and for the convenience of the parties and witnesses, pursuant to 28 U.S.C. § 1404(a)."  *Taite v. Colgate Univ.*, No. 12-CV-3435, 2012 WL 9334547, at *1 (E.D.N.Y. July 11, 2012) (citations omitted).

"The factors for evaluating a motion for transfer include: (1) the convenience to parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer."  *Hall*, 89 F. Supp. 2d at 494.  "The core determination under § 1404(a) is the center of gravity of the litigation […] Courts routinely transfer cases where the principal events occurred, and the principal witnesses are located in another district.'"  *Totonelly v. Cardiology Associates of Corpus Christi, Inc.*, 932 F.Supp. 621, 623 (S.D.N.Y.1996) (citations omitted).

Here, having considered the totality of the factors and the allegations in this case, the Court finds a transfer of this action to the Western District of Oklahoma to be proper pursuant to 28 U.S.C. § 1404(a).  The practical considerations of trying this case, the balance of the witnesses and the sources of proof, the convenience to the witnesses and the parties, and the interests of justice all weigh in favor of a transfer of this action, as does the Western District of Oklahoma's superior familiarity with the state laws governing the Oklahoma regulatory state.

**CONCLUSION**

For the reasons set forth above, this action is hereby transferred to the Western District of Oklahoma pursuant to 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404(a) and Defendants' motion to dismiss is denied without prejudice to renewal following the transfer of this action.  Because the Court finds that a transfer of venue is appropriate here it does not reach the question of personal jurisdiction.

The Clerk of Court is respectfully directed to transfer this case to the Western District of Oklahoma.

SO ORDERED

     /s/                            

ORELIA E. MERCHANT
United States District Judge

Dated:  July 15, 2024
      Brooklyn, New York

11